**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| ALI MOHAMMADI, | : | | |
| Plaintiff, | : | Civil Action No.: | 08-1441 (RMU) |
| v. | : | Document No.: | 12 |
| JONATHAN SCHARFEN *et al.*, | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**GRANTING THE DEFENDANTS' CONSENT MOTION TO TRANSFER AND DENYING WITHOUT PREJUDICE THE DEFENDANTS' MOTION TO DISMISS**

## I. INTRODUCTION

This case comes before the court on the defendants' consent motion to transfer and motion to dismiss which the plaintiff opposes. The plaintiff, Ali Mohammadi, brings suit against the defendants, Michael Aytes, Acting Director, U.S. Citizenship and Immigration Services ("USCIS"); Janet Napolitano, Secretary, U.S. Department of Homeland Security ("DHS"); and Robert Mueller, Director, Federal Bureau of Investigation ("FBI"),[1] seeking to compel USCIS to adjudicate the plaintiff's N-400 application for naturalization. The defendants move to transfer the case to the United States District Court for the District of Maryland ("District of Maryland" or "transferee district"), or in the alternative, to dismiss the case for lack of jurisdiction. The plaintiff consents to the defendants' motion to transfer. Because the plaintiff could have brought this suit in the District of Maryland, and considerations of convenience and the interest of justice

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Michael Aytes, the Acting Deputy Director of the U.S. Department of Homeland Security, and Janet Napolitano, the Secretary of the U.S. Department of Homeland Security, are "automatically substituted" as defendants for their predecessors, Jonathan Scharfen and Michael Chertoff, respectively.

weigh in favor of transferring the action to that district, the court grants the defendants' motion to transfer the case to the District of Maryland.[2]

## II. BACKGROUND

### A. Factual History

The plaintiff has been a lawful permanent resident of the United States since November 17, 1983. Compl. ¶ 10 & Ex. 1. On July 20, 2006, he applied for naturalization with USCIS. Compl. ¶ 10 & Ex. 2. He received a receipt notice from USCIS on July 27, 2006, informing him that he would be "notified of the date and place of [his] interview when [he was] scheduled by the local USCIS office" and that he could "expect to be notified within 180 days of this notice." *Id.* In accordance with this notice, the plaintiff maintains that he should have been scheduled for an interview by January 27, 2007. *Id.* ¶ 10.

On July 28, 2006, USCIS sent a Fingerprinting Notification to the plaintiff instructing him to appear at the USCIS Application Center in Wheaton, Maryland on August 16, 2006. Compl. ¶ 11 & Ex. 3. The plaintiff complied with this request. *Id.* Frustrated with the delay in the adjudication of his application for naturalization, the plaintiff enlisted the assistance of Congressman Chris Van Hollen. Compl. ¶ 12. After inquiring into the status of the plaintiff's pending naturalization application, Congressman Van Hollen informed the plaintiff on August 7, 2007 that USCIS had notified him that the plaintiff's application for naturalization was pending the completion of background checks. *Id.* & Ex. 4.

---

[2] In light of the transfer, the court does not address the defendants' motion to dismiss. *See Abusadeh v. Chertoff*, 2007 WL 2111036, at *1 (D.D.C. July 23, 2007) (declining to address the defendant's motion to dismiss "[i]n light of the transfer of venue"); *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 58 (D.D.C. 2000) (granting the defendant's motion to transfer venue and denying all other pending motions as moot).

### B. Procedural History

On August 19, 2008, the plaintiff filed a complaint with this court. *See* Compl. The plaintiff seeks declaratory and injunctive relief to compel the defendants to "immediately and forthwith take all appropriate actions to adjudicate" his naturalization application. *Id.* ¶ 1. When the plaintiff filed his complaint, he had not yet been scheduled for an interview regarding his naturalization application, *id.*; however, the defendants indicate in their motion to transfer, filed on March 13, 2009, that USCIS notified the plaintiff on January 29, 2009 that he would be interviewed on February 17, 2009, Defs.' Mot. at 3 & Ex. 2. The plaintiff alleges that the defendants have "improperly withheld action and adjudication for over two years." Compl. ¶ 1. The court now addresses the defendants' consent motion to transfer.

## III. ANALYSIS

### A. Legal Standard for Venue under 28 U.S.C. § 1391(e) and Transfer Pursuant to 28 U.S.C. § 1404(a)

When federal jurisdiction is not premised solely on diversity and a defendant is an officer, employee, or agency of the United States, 28 U.S.C. § 1391(e) controls venue, establishing that venue is proper in

> any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e).

If, upon objection of a party, the court concludes that venue is improper, it may transfer the case pursuant to 28 U.S.C. § 1406. In an action where venue is proper, 28 U.S.C. § 1404(a) nonetheless authorizes a court to transfer a civil action to any other district where it could have

been brought "for the convenience of parties and witnesses, in the interest of justice[.]" 28 U.S.C. § 1404(a). Section 1404(a) vests "discretion in the district court to adjudicate motions to transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). Under this statute, the moving party bears the burden of establishing that transfer is proper. *Trout Unlimited v. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996).

Accordingly, the defendant must make two showings to justify transfer. First, the defendant must establish that the plaintiff originally could have brought the action in the proposed transferee district. *Van Dusen*, 376 U.S. at 622. Second, the defendant must demonstrate that considerations of convenience and the interest of justice weigh in favor of transfer to that district. *Trout Unlimited*, 944 F. Supp. at 16. As to the second showing, the statute calls on the court to weigh a number of case-specific private and public-interest factors. *Stewart Org.*, 487 U.S. at 29. The private-interest considerations include: (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. *Trout Unlimited*, 944 F. Supp. at 16 (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *Heller Fin., Inc. v. Riverdale Auto Parts, Inc.*, 713 F. Supp. 1125, 1129 (N.D. Ill. 1989); 15 FED. PRAC. & PROC. § 3848). The public-interest considerations include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *Id*.

### B. The Court Grants the Defendants' Consent Motion to Transfer the Action to the District of Maryland

#### 1. The Plaintiff Could Have Brought this Action in the District of Maryland

The defendants argue and the plaintiff does not contest that the plaintiff could have brought this case in the District of Maryland because venue in that jurisdiction is proper pursuant to 28 U.S.C. § 1391. Defs.' Mot. at 6. In an action brought against an employee of the United States, venue is proper in any district where a "substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(e)(2). The plaintiff's naturalization application was transferred on September 15, 2008 from the Vermont Service Center, which conducts "initial processing of immigration and naturalization applications," to the District 6 Baltimore Office and is "currently pending" before that office. Defs.' Mot., Ex. 1 ("Donohue Decl.") ¶ 4-5. Additionally, on August 16, 2006, the plaintiff, in compliance with a Fingerprint Notification, reported to an Application Support Center in Wheaton, Maryland, to have his fingerprints scanned. Compl. ¶ 11 & Ex. 3. The plaintiff also attended an interview at the District 6 Baltimore office regarding his pending application on February 17, 2009. Donohue Decl. ¶ 6. Accordingly, because the majority of the events or omissions giving rise to the [plaintiff's] claim occurred in Maryland, the plaintiff could have brought suit in the District of Maryland and venue is proper there. *See Aftab v. Gonzalez*, 2009 WL 368660, at *3 (D.D.C. Feb. 17, 2009) (holding that the action could have been brought in the Northern District of Texas because the USCIS Texas Service Center oversaw the plaintiff's application adjustment and "took actions in processing [the plaintiff's] application by gathering evidence and fingerprints" from the plaintiff); *Al-Ahmed v. Chertoff*, 564 F. Supp. 2d 16, 18 (D.D.C. 2008) (determining that because the "plaintiff was scheduled by [the Fairfax, Virginia USCIS office] for a fingerprint

appointment and interviewed there in connection with his adjustment of status application," the plaintiff could have brought suit in the Eastern District of Virginia).

**2. The Balance of Private and Public Interests Favors Transfer**

**a. Private-Interest Factors**

The private interest factors that the court considers include "each party's choice of forum, where the claim arose, the convenience of the parties, the convenience of the witnesses, particularly if important witnesses may actually be unavailable to give live testimony in one of the trial districts, and the availability and ease of access to sources of proof." *Robinson v. Eli Lilly & Co.*, 535 F. Supp. 2d 49, 51 (D.D.C. 2008). Because the plaintiff consents to transfer of the case, Defs.' Mot. at 2, 3, and the events giving rise to the claim have occurred in Maryland, *see* Compl. & Ex. 3, Defs.' Mot. at 3, the court "presumes that the convenience of the parties favors transfer," *Johnson v. Lumenos*, 471 F. Supp. 2d 74, 77 (D.D.C. 2007) (considering, as a result of the plaintiff's consent to transfer, only the private-interest factors of "convenience of the witnesses and the ease of access to proof").

The convenience of the witnesses "is considered only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Mahoney v. Eli Lilly & Co.*, 545 F. Supp. 2d 123, 127 (D.D.C. 2008) (citing *Brannen v. Nat'l R.R. Passenger Corp.*, 403 F. Supp. 2d 89, 94 (D.D.C. 2005)). And there is no indication here that transfer of the case to the District of Maryland would pose any threat to the potential availability of witnesses. *See id.* (citing *FC Inv. Group LC v. Lichtenstein*, 441 F. Supp. 2d 3, 14 (D.D.C. 2006)) (noting that "[w]ithout evidence to the contrary, courts assume that witnesses will voluntarily appear"). Additionally, the parties should have no trouble with respect to access to proof because of the proximity of most of the events giving rise to the plaintiff's cause of action to the District of Maryland. *See Johnson*, 471

F. Supp. 2d at 78 (concluding that "the parties ought to have ready access to proof" because the courthouse for the transferee district was "in the same city where the alleged events occurred").

**b. Public-Interest Factors**

The court must also evaluate public considerations that are pertinent to the case. *See Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 129 (D.D.C. 2001). The public-interest factors include the transferee district's familiarity with the governing laws, the relative congestion of the calendars of the transferee and transferor courts, and the local interest in deciding local controversies at home. *Trout Unlimited*, 944 F. Supp. at 16. With respect to the first factor, because the plaintiff's claims are based on federal law, the court recognizes "the principle that the transferee federal court is competent to decide federal issues correctly." *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1175 (D.C. Cir. 1987) (internal citations omitted). Thus, the court has no reason to question the District of Maryland's ability to adjudicate the plaintiff's claims. *See Johnson*, 471 F. Supp. 2d at 78 (noting that "[t]he transferee district is, no doubt, familiar with federal law and competent to interpret it"). Similarly, regarding the second factor, the court has "no reason to believe" that the court calendars in the District of Maryland are "more or less congested" than those in this court. *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 70 n.6 (D.D.C. 2003); *see also Johnson*, 471 F. Supp. 2d at 78 (observing that "[t]he court has no reason to suspect that the Eastern District's docket could not accommodate this case").

Finally, with respect to the third factor, the court acknowledges the "local interest in having localized controversies decided at home." *Sierra Club*, 276 F. Supp. 2d at 70 (quoting *Adams v. Bell*, 711 F.2d 161, 167 (D.C. Cir. 1983)). In determining whether a controversy is local in nature, courts have considered a myriad of factors, including where the decision-making

processes occur, whether a transfer would result in delay in resolving the case and where the parties are located. *See id.* (internal citations omitted). In this case, the defendants maintain that the District of Maryland "has a local interest in resolving this local controversy at home." Defs.' Mot. at 9. Indeed, the plaintiff resides in Maryland and has conducted both his fingerprinting and his application interview at USCIS offices located in Maryland. *See* Compl. ¶¶ 6, 11 & Ex. 3; Defs.' Mot. at 3 & Ex. 2. Additionally, the plaintiff's application for naturalization is currently pending before the Baltimore USCIS office and officials there are responsible for adjudicating his application, Donohue Decl. ¶ 3-4, and there is no evidence that a transfer to the District of Maryland will delay adjudication of the instant claims. Accordingly, the court holds that the District of Maryland has a strong local interest in having this matter resolved there. *Trout Unlimited*, 944 F. Supp. at 19 (transferring venue because "[a] clear majority of the operative events took place in Colorado," and consequently Colorado, instead of the District of Columbia, had "a substantial interest in the resolution of the claims").

## IV. CONCLUSION

For the foregoing reasons, the court grants the defendants' consent motion to transfer this action to the District of Maryland. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 7th day of April, 2009.

RICARDO M. URBINA
United States District Judge